UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL CASTALDO,<br><br>       Plaintiff,<br><br>-v-<br><br>DANIEL F. MARTUSCELLO III, COMMISSIONER OF NEW YORK DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, in his official capacity; DARREN AYOTTE, DEPUTY COMMISSIONER FOR ADMINISTRATIVE SERVICES OF NEW YORK DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, in his official capacity; JOSEPH NOETH, DEPUTY COMMISSIONER FOR CORRECTIONAL FACILITIES OF NEW YORK DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, in his official capacity; DARREN MILLER, CHIEF OF OFFICE OF SPECIAL INVESTIGATIONS OF NEW YORK DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, in his official capacity; JOEY CLINTON, SUPERINTENDENT OF GROVELAND CORRECTIONAL FACILITY, in his official capacity; CORRECTIONAL OFFICER DANIEL WENZEL, in his individual and official capacities; CORRECTIONAL OFFICER THEODORE OLEKSYN, in his individual and official capacities; CORRECTIONAL OFFICER ALAN HARVEY, in his individual and official capacities; CORRECTIONAL OFFICER JAMES MUNDORFF JR., in his individual and official capacities; and JOHN/JANE DOES,<br><br>       Defendants. | Case No. _____<br><br>**COMPLAINT** |

Plaintiff Michael Castaldo ("Castaldo"), through his attorneys, Dorsey & Whitney LLP, as and for his Complaint against Defendants, alleges as follows:

**INTRODUCTION**

1. While in Defendants' custody, Castaldo was brutally beaten by the correctional officer Defendants, leaving him with severe physical injuries and emotional trauma. Following that assault, he was denied access to reasonable medical care, exacerbating his injuries. Then,

after falsely blaming Castaldo for the correctional officer Defendants' assault on him, Defendants then excessively imprisoned him for approximately four months beyond the date upon which he was scheduled to be released.

2. Castaldo now seeks monetary relief for the physical and emotional trauma that he has suffered, and for the wrongful prolonging of his imprisonment.

## PARTIES

3. Castaldo is an individual who currently resides at 9-02 38th Avenue, Apartment #306, Long Island City, NY 11101.

4. Defendant Daniel F. Martuscello III ("Martuscello") is an individual who, at the time of the events described in this Complaint, served as the Commissioner of the New York Department of Corrections and Community Supervision ("DOCCS"). Upon information and belief, Martuscello continues to serve in that role today.

5. Defendant Darren Ayotte ("Ayotte") is an individual who, at the time of the events described in this Complaint, served as the Deputy Commissioner for Administrative Services of DOCCS.

6. Defendant Joseph Noeth ("Noeth") is an individual who, at the time of the events described in this Complaint, served as the Deputy Commissioner for Correctional Facilities of DOCCS.

7. Defendant Darren Miller ("Miller") is an individual who, at the time of the events described in this Complaint, served as the Chief of Office of Special Investigations of DOCCS. Upon information and belief, Miller has supervisory responsibilities for investigations involving DOCCS facilities as well as proactive measures such as inspections and monitoring initiatives.

8. Defendant Joey Clinton ("Clinton") is an individual who, at the time of the events described in this Complaint, served as the Superintendent of Groveland Correctional Facility in

Livingston, New York ("Groveland"). As Groveland's Superintendent, Clinton is in charge of supervision of the inmates, enforcement of the rules, and the overall administration of Groveland. Clinton has also been a member of the Prison Violence Task Force (discussed below), and he contributed to the June 2023 DOCCS Prison Violence Task Force Report.

9. Upon information and belief, Defendants Martuscello, Ayotte, Noeth, and Miller (together, the "DOCCS Defendants") and Defendant Clinton all had supervisory responsibilities encompassing the conditions at Groveland when Castaldo was subjected to excessive force, denied reasonable medical care, and excessively imprisoned, as described in more detail below.

10. Defendant Correctional Officer Daniel Wenzel ("Wenzel") is an individual who, at the time of the events described in this Complaint, served as a Correctional Officer at Groveland. Upon information and belief, Wenzel continues to serve in that role today.

11. Defendant Correctional Officer Theodore Oleksyn ("Oleksyn") is an individual who, at the time of the events described in this Complaint, served as a Correctional Officer at Groveland. Upon information and belief, Oleksyn continues to serve in that role today.

12. Defendant Correctional Officer Alan Harvey ("Harvey") is an individual who, at the time of the events described in this Complaint, served as a Correctional Officer at Groveland. Upon information and belief, Harvey continues to serve in that role today.

13. Defendant Correctional Officer James Mundorff Jr. ("Mundorff") is an individual who, at the time of the events described in this Complaint, served as a Correctional Officer at Groveland. Upon information and belief, Mundorff continues to serve in that role today.

14. Defendant John Doe, a correctional Sergeant named Simmons ("Simmons") is an individual who, at the time of the events described in this Complaint, served as a Correctional

Officer at Groveland.

15.  Defendants John and Jane Does I-XX are other individuals or entities who, at the time of the events described in this Complaint, directly or indirectly participated or failed to intervene to stop the assault and further victimization of Plaintiff. Defendants are not yet identified.

## JURISDICTION AND VENUE

16.  This action is authorized by 42 U.S.C. § 1983.  Subject matter jurisdiction for Castaldo's federal claims rests upon 28 U.S.C. §§ 1331 and 1343(a)(4).  This Court has authority to award costs and attorneys' fees under 42 U.S.C. § 1988.  The Court has jurisdiction over Castaldo's state law claims pursuant to 28 U.S.C. § 1367(a).

17.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events and omissions giving rise to Castaldo's claims occurred in this district.

## FACTUAL ALLEGATIONS

18.  On July 24, 2023, Castaldo was imprisoned at Groveland in Livingston County, New York.

19.  That day, at approximately 8:00 PM, Castaldo was informed that he had legal mail waiting in the Law Library, and therefore he was allowed to walk across the yard to that location from the Pederson Building, where he was attending classes.

20.  As Castaldo approached the Law Library, correctional officers Daniel Wenzel and Alan Harvey were standing close to a correctional van parked in front of a security tower.

21.  Wenzel demanded that Castaldo approach and put his hands on the side of the van to be searched. Castaldo complied.

22.  After performing a search of Castaldo, without provocation or warning, Wenzel

4

and Harvey began to violently assault him, with Harvey holding him against the van while Wenzel delivered punches, blows, kicks, and elbows to Castaldo's body.

23. Castaldo attempted to flee the assault, but was subsequently tackled from behind by Wenzel and subjected to continued beatings while on the ground.

24. Correctional officers Oleksyn, Mundorf, and John Doe(s) joined the fray while Castaldo was pinned to the ground and, like Wenzel and Harvey, struck Castaldo with their fists, feet, and batons.

25. Correctional officers Wenzel, Harvey, Oleksyn, Mundorf, and John Doe(s) also sprayed Castaldo with pepper spray at close range, knocked him to the ground, twisted his ankle and foot, cuffed him, kicked him in the face, and kneeled on his back, legs, and neck. Wenzel also repeatedly struck Castaldo in the buttocks with his baton; upon information and belief, this was an attempt to sexually assault Castaldo.

26. This beating was excessive, offensive, unprivileged, and without any provocation or cause.

27. Castaldo's only previous interaction with Wenzel or Harvey had occurred on the previous day in Castaldo's housing unit, when Castaldo gently bumped into Wenzel by mistake. As Wenzel left the area, he knocked all of Castaldo's possessions, including a bible, shower supplies, and cards, off Castaldo's locker and onto the floor. Castaldo immediately apologized to Wenzel and thought nothing more of it until the assault the next day.

28. The next day, immediately before Wenzel delivered the first punch of the assault, Wenzel whispered to Castaldo: "so, you like bumping into people, huh?" Upon information and belief, Wenzel was referring to the accidental "bumping" incident that occurred in Castaldo's

housing unit the previous day.

29. During the assault, Castaldo repeatedly cried out for help, but not a single correctional officer or other official interceded or stopped the illegal conduct from occurring.

30. The violent assault occurred in front of several inmates outside in the recreation yard who yelled in an attempt to stop the correctional officers' attack.

31. After this unprovoked attack, Defendants' correctional officers handcuffed Castaldo and transported him to Groveland's medical facility in an emergency response medical bus, where he was then dragged through gravel and pavement into the infirmary by his handcuffs.

32. There, he was not given proper medical treatment. For example, the only medication given to Castaldo was aspirin. Moreover, rather than stitching gashes he had suffered, staff merely applied a Band-Aid on the wound.

33. Then, at the medical facilities, Castaldo was further assaulted. While cuffed and laying in a gurney, a correctional Sergeant named Simmons and another correctional officer continued to beat Castaldo, including by striking, slapping, and punching his body. Several correctional officers and a nurse named Barrett were present during the continued assault. Again, not a single correctional officer, medical personnel, or other official present interceded or stopped the illegal conduct from occurring.

34. As a result of these assaults, Castaldo suffered severe hearing loss in his left ear and other injuries, including to his foot, ankle, wrists, hands, leg, glute, head, shoulders, back, and ribs. These injuries may have been avoided had Castaldo received adequate medical care.

35. In the months following the assault, Castaldo submitted dozens of requests for medical treatment, including but not limited to, stitches, glue, and/or gauze for open wounds,

audiology testing for hearing loss, aspirin or ibuprofen for injuries sustained to his foot, ankle, glue, head, back, neck and shoulders, and x-rays of suspected fractured ribs. Some of those requests were made while Castaldo remained incarcerated at Groveland, and others were made after he had been transferred to Mohawk Correctional Facility in Rome, New York or Collins Correctional Facility in Collins, New York.

36. Castaldo's requests for medical treatment were almost universally denied, ignored, or delayed by Defendants. Defendants' refusal to provide prompt and appropriate medical treatment resulted in Castaldo's prolonged pain and suffering while incarcerated.

37. On July 24, 2023, the day of the above-described assault, Castaldo's scheduled release date was September 1, 2023.

38. However, on August 4, 2023, Defendants issued a Tier III disciplinary ticket, falsely accusing Castaldo of assaulting Groveland staff. This ticket had the effect of delaying Castaldo's scheduled release.

39. On or around November 23, 2023, Castaldo was informed by a Supervising Rehabilitation Coordinator that the disciplinary charges stemming from the incident occurring on July 24, 2023 had been withdrawn and/or dismissed.

40. He later received a letter advising him that the superintendent's hearing for charges filed against him for assaulting staff had been canceled and that the disciplinary charges had been "reviewed and reversed" on or before November 8, 2023.

41. Although Castaldo's release date should have been September 1, 2023, because of the false charges and wrongful conviction, he was not released until December 21, 2023.

42. Before and since his release, Castaldo has suffered severe physical pain and loss

of use, as well as severe emotional distress.

43.     Castaldo now suffers from hearing loss in his left ear, scarring from the lacerations on his wrist, and residual injuries to his foot, ankle, buttocks, shoulder, neck, and head.

44.     Since his release, Castaldo has also incurred substantial medical expenses and has been required to devote countless hours to receiving medical treatment for injuries caused by the assault and Defendants' indifference to his medical needs, rather than devote those hours to pursuing employment or other endeavors.

45.     The assault and mistreatment that Castaldo suffered is consistent with a pattern of misconduct and unconstitutional use of force by the uniformed staff at Groveland that, upon information and belief, is known to DOCCS and Groveland and has been widely reported by media outlets.

46.     Upon information and belief, correctional officers at Groveland routinely have used and continue to use unnecessary and excessive force without justification against inmates under circumstances where, at most, some minimal, non-injurious restraint may have been justified to control an inmate an ensure the officers' safety.

47.     Indeed, there has been a concerning increase in violence within the correctional facilities operated by DOCCS, including Groveland, exacerbated by the fact that DOCCS has been experiencing an "alarming staffing shortage." *See DOCCS Prison Violence Task Force Report* (June 2023), at pp. 5 and 51, *available at* https://doccs.ny.gov/system/files/documents/2023/06/prison-violence-task-force-report_june-2023_final.pdf (last viewed December 18, 2024). The problem is not only widespread violence against inmates in DOCCS correctional facilities but also the related "cover-ups." *See, e.g.*, *New*

*York State Corrections Dept. Takes On Guards' Union Over Brutality*, THE NEW YORK TIMES (April 11, 2016), *available at* https://www.nytimes.com/2016/04/12/nyregion/new-york-state-corrections-dept-takes-on-guards-union-over-brutality.html ("Investigators had often been reluctant to challenge the powerful corrections officers' union, and the disciplinary system was so stacked in the union's favor that a guard could be found guilty of brutalizing an inmate and not be fired.") (last viewed December 18, 2024); *see also* Chris Gelardi, *New Prison Chief Is a Son of the System*, NEW YORK FOCUS (June 28, 2023), *available at* https://nysfocus.com/2023/06/28/daniel-martuscello-commissioner-new-york-prison ("DOCCS rarely tries to discipline officers who abuse incarcerated people: In nearly nine out of 10 cases where the agency paid cash to settle lawsuits over abuse, it made no attempt to discipline officers involved. When it did want to fire guards, the union overpowered it another nine out of 10 times") (last viewed December 18, 2024).  The then-executive deputy commissioner of DOCCS, Daniel F. Martuscello III, "was not surprised" about the instances of excessive force and the "blue wall" inside New York prisons that protects abusive correctional officers. *See* Joseph Neff, Alysia Santo and Tom Meagher, *How a 'Blue Wall' Inside New York State Prisons Protects Abusive Guards,* THE MARSHALL PROJECT (May 22, 2023), *available at* https://www.themarshallproject.org/2023/05/22/new-york-prison-corrections-officer-abuse-cover-up (last viewed December 18, 2024).

48.     Moreover, upon information and belief, as a regular and routine matter, inmates who are targeted for abuse by correctional officers in DOCCS correctional facilities, including Groveland, are removed from their cells to isolated areas without video cameras, such as search rooms and facility receiving rooms.  As admitted in the Prison Rape Elimination Act (PREA) Audit Report for Groveland (November 2022), "Groveland Correctional Facility has not installed

or updated a video monitoring system, electronic surveillance system, or other monitoring technology since their last PREA audit." *See* https://doccs.ny.gov/system/files/documents/2022/12/groveland-cf-prea-audit-report-final-11.7.2022.pdf (last viewed December 18, 2024).

49. Upon information and belief, the supervisory staff within Groveland and DOCCS know now, and knew throughout the relevant time period when the events described above occurred, that this pattern of physical abuse and violence, as well as the related cover-ups and sham investigations, existed and still exists in Groveland and other DOCCS correctional facilities. Their failure to curb such conduct despite their affirmative duty to do so, and their specific acts that have created and now perpetuate such institutionalized conduct, including the unconstitutional use of excessive force, constitute deliberate indifference to the rights and safety of the inmates in their care and custody, including Castaldo.

## FIRST CAUSE OF ACTION
**(Against All Defendants - Excessive Force in Violation of the U.S. Constitution)**

50. Castaldo repeats and realleges each and every allegation set forth above as if fully restated here.

51. DOCCS Defendants and Defendant Clinton are liable pursuant to 42 U.S.C. § 1983 for maintaining a policy, practice, and custom of using excessive force against individuals incarcerated at Groveland outside of any good faith effort to maintain or restore discipline, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

52. CO Defendants are liable pursuant to 42 U.S.C. § 1983 for using excessive force against Castaldo outside of any good faith effort to maintain or restore discipline, in violation of

10

the Eighth and Fourteenth Amendments to the United States Constitution.

## SECOND CAUSE OF ACTION
### (Against DOCCS Defendants, Clinton, Wenzel, and John/Jane Does - Medical Indifference in Violation of the U.S. Constitution)

53. Castaldo repeats and realleges each and every allegation set forth above as if fully restated here.

54. DOCCS Defendants and Defendant Clinton are liable pursuant to 42 U.S.C. § 1983 for maintaining a policy, practice, and custom of acting with deliberate indifference to the serious medical needs of individuals incarcerated at Groveland, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

55. Defendants Wenzel, John Doe (Simmons), and John Does are liable pursuant to 42 U.S.C. § 1983 for acting with deliberate indifference to Castaldo's serious medical needs following the CO Defendants' use of excessive force against Castaldo, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

56. Defendant Jane Doe (Barrett) is liable pursuant to 42 U.S.C. § 1983 for acting with deliberate indifference to Castaldo's serious medical needs following the CO Defendants' use of excessive force against Castaldo, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

## THIRD CAUSE OF ACTION
### (Against John/Jane Does - Failure to Intervene in Violation of the U.S. Constitution)

57. Castaldo repeats and realleges each and every allegation set forth above as if fully restated here.

58. Defendants John/Jane Does are liable pursuant to 42 U.S.C. § 1983 for failing to intervene during the CO Defendants' use of excessive force against Castaldo, despite having a realistic opportunity to intervene, in violation of the Eighth and Fourteenth Amendments to the

United States Constitution.

## FOURTH CAUSE OF ACTION
### (Against Clinton and CO Defendants - Unlawful Extension of Incarceration in Violation of the U.S. Constitution)

59. Castaldo repeats and realleges each and every allegation set forth above as if fully restated here.

60. Defendant Clinton and the CO Defendants are liable pursuant to 42 U.S.C. § 1983 for issuing in bad faith a disciplinary ticket against Castaldo for assaulting Groveland staff—a charge that they knew to be false when it was made, and that is demonstrably false in light of the subsequent cancelation of Castaldo's disciplinary hearing and reversal and withdrawal of the ticket—which had the effect of arbitrarily lengthening Castaldo's incarceration, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

## FIFTH CAUSE OF ACTION
### (Against DOCCS Defendants, Clinton, and CO Defendants - Substantive Due Process)

61. Castaldo repeats and realleges each and every allegation set forth above as if fully restated here.

62. DOCCS Defendants and Defendant Clinton are liable pursuant to 42 U.S.C. § 1983 for maintaining a policy, practice, and custom of committing abuses against individuals incarcerated at Groveland that shocks the conscience, in violation of the Fourteenth Amendment to the United States Constitution.

63. The CO Defendants are liable pursuant to 42 U.S.C. § 1983 for abuses against Castaldo that shock the conscience, in violation of the Fourteenth Amendment to the United States Constitution.

## SIXTH CAUSE OF ACTION
### (Against Wenzel and John/Jane Does - Medical Negligence)

64. Castaldo repeats and realleges each and every allegation set forth above as if fully

restated here.

65. Defendants Wenzel, John Doe (Simmons), Jane Doe (Barrett), and John/Jane Does owed a duty to provide reasonable medical care in response to Castaldo's serious medical needs following the CO Defendants' use of excessive force against Castaldo while he was incarcerated at Groveland.

66. Defendants Wenzel, John Doe (Simmons), Jane Doe (Barrett), and John/Jane Does breached that duty and departed from accepted community standards of care by failing to provide reasonable medical care to Castaldo at the Groveland medical facility and afterward, causing him significant injuries.

## SEVENTH CAUSE OF ACTION
**(Against DOCCS Defendants and Clinton - Negligent Hiring, Training, and Supervision)**

67. Castaldo repeats and realleges each and every allegation set forth above as if fully restated here.

68. The DOCCS Defendants and Defendant Clinton hired, trained, and supervised the CO Defendants.

69. The DOCCS Defendants and Defendant Clinton's hiring, training, and management should ensure that brutal, unprovoked attacked, such as the ones that befell Castaldo, are prevented.

70. In light of the above information available to the DOCCS Defendants and Defendant Clinton, they knew or should have known that the CO Defendants were likely to abuse inmates like Castaldo, but did not adequately screen, train, or supervise their cruel and abusive employees.

71. Upon information and belief, the DOCCS Defendants and Defendant Clinton failed to discipline the CO Defendants after they assaulted Castaldo on multiple occasions and

13

deprived him of necessary medical care.

72. Moreover, due to the DOCCS Defendants and Defendant Clinton's negligence, the CO Defendants needlessly prolonged Castaldo's incarceration by falsely implicating him in the July 24, 2023 attacks.

73. On information and belief, the CO Defendants are still employed by DOCCS.

**WHEREFORE**, Castaldo respectfully requests that the Court:

1. Award Castaldo compensatory damages for the injuries that he has sustained, as described more fully herein;

2. Award Castaldo reasonable attorneys' fees and the associated costs and expenses incurred in connection with the preparation, filing, and prosecution of this lawsuit, pursuant to 42 U.S.C. § 1988; and

3. Award Castaldo such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial of all issues so triable.

Dated:   New York, New York
         December 20, 2024

**DORSEY & WHITNEY LLP**

*/s/ Christopher G. Karagheuzoff*
Christopher G. Karagheuzoff
Anthony P. Badaracco (*pro hac to follow*)
Helen Jiang (*pro hac to follow*)
51 West 52nd Street
New York, New York 10019
(212) 415-9200
karagheuzoff.christopher@dorsey.com
badaracco.anthony@dorsey.com
jiang.helen@dorsey.com

*Attorneys for Plaintiff Michael Castaldo*